**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **HERSHEY ENTERTAINMENT &** | : | |
| **RESORTS COMPANY ,** | : | |
| | : | **CIVIL ACTION NO. _____** |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **DAVID MAGROGAN GROUP, LLC** | : | |
| **and HARVEST SUSQUEHANNA** | : | |
| **VALLEY, LLC** | : | |
| **Defendants** | : | |

## <u>COMPLAINT</u>

1.      Since June 29, 2009, Plaintiff Hershey Entertainment & Resorts

Company has operated a restaurant in Central Pennsylvania using the trademark

"Harvest" accompanied by a "stalks of grain" logo design, and providing a

seasonally-changing menu of farm-to-table American cuisine containing locally-

sourced ingredients.

2.      Defendants are a multi-million dollar restaurant conglomerate based

in Philadelphia, who have announced their intentions to open a restaurant in

August 2014 at a location in Harrisburg, Pennsylvania, 10 miles from Plaintiff's

restaurant.  Over Plaintiff's objections and despite Plaintiff's demand that

Defendants cease and desist their competing use of the contested marks in Central

Pennsylvania, Defendants' restaurant  also would be named "Harvest" and would

use a "stalks of grain" logo nearly-identical to Plaintiff's design.  Defendants'

restaurant, like Plaintiff's restaurant, would market a seasonal, locally-sourced,

"farm-fresh" menu of American cuisine.

3.     Because consumers encountering Defendants' use of the "Harvest"

trademarks in Central Pennsylvania mistakenly will believe Defendants' restaurant

is affiliated with or related to Plaintiff's Harvest Restaurant, Plaintiff brings this

suit to protect those consumers and vindicate its senior rights to the Harvest

trademark in Central Pennsylvania.

## I. <u>THE PARTIES</u>

4.     Plaintiff Hershey Entertainment & Resorts Company ("HE&R") is a

corporation organized under the laws of the Commonwealth of Pennsylvania,

which maintains its headquarters and principal place of business at 27 West

Chocolate Avenue, Hershey, Pennsylvania 17033.

5.     Upon information and belief, Defendant David Magrogan Group,

LLC ("Magrogan Group") is a Pennsylvania limited liability company with its

principal place of business at 39 South High Street, West Chester, Pennsylvania

19382 and is doing business in the Commonwealth of Pennsylvania and within this judicial district.

6.      Upon information and belief, Defendant Harvest Susquehanna Valley, LLC ("Harvest Susquehanna") is a Pennsylvania limited liability company with its principal place of business at 18 West Gay Street, West Chester, Pennsylvania 19380 and is doing business in the Commonwealth of Pennsylvania and within this judicial district.

## II.  JURISDICTION AND VENUE

7.      This action arises under the trademark laws of the United States and specifically the Lanham Act, 15 U.S.C. §§1051, *et seq.*

8.      HE&R and Defendants use the trademarks at issue in interstate commerce and in a way that affects interstate commerce.  HE&R has used the marks at issue continuously since June 29, 2009 for the promotion of its restaurant and restaurant services, including by internet and out-of-state advertisements. Plaintiff's restaurant attracts and serves patrons from outside of the Commonwealth.  Upon information and belief, Defendants also intend to attract and serve patrons from outside of the Commonwealth at their restaurant, located adjacent to a major interstate highway, and do serve such patrons at their other restaurant locations.  Upon information and belief, Defendants also advertise the marks at issue over the internet and in regular advertisements outside the borders

3

of Pennsylvania.  Accordingly, this Court has federal question jurisdiction over the

subject matter of this action pursuant to 15 U.S.C. §1121 and 28 U.S.C. §1338(a)

and (b).  The Court has supplemental jurisdiction over the state law claims

pursuant to 28 U.S.C. §1367.

9.     Venue is appropriate in this Court pursuant to 28 U.S.C. §1391(b)(2)

because a substantial part of the events giving rise to Plaintiff's claims occurred in

this judicial district.

### III.  <u>FACTS COMMON TO ALL COUNTS</u>

**A.     Plaintiff HE&R Is The Senior User Of The Common Law
Trademark For The "Harvest" Name And Accompanying
"Stalks of Grain" Design For Use In Restaurant Services In
Central Pennsylvania.**

10.     HE&R is a world-class, nationally-recognized entertainment and

hospitality company operating a variety of entertainment venues, resort facilities,

and restaurants.  HE&R is dedicated to preserving the legacy of its founder, Milton

S. Hershey, and employs 1,650 full-time and 7,400 part-time and seasonal

employees in Central Pennsylvania.

11.     Among other hospitality and entertainment venues, HE&R operates

The Hotel Hershey, which is located at 100 Hotel Road, Hershey, Pennsylvania

17033.

12.     HE&R owns and operates a restaurant ("HE&R's Harvest Restaurant")

under the name "HARVEST" and "HARVEST GENUINE AMERICAN

CUISINE," which is located in its own separate building on the grounds of The Hotel Hershey.

13.    Since June 29, 2009, HE&R continuously has used the HARVEST name, together with the below-referenced design depicting stalks of grain (the "HE&R Marks"), for use with and promotion of its restaurant services, both with and without the wording "GENUINE AMERICAN CUISINE."



14.    HE&R's Marks are arbitrary or suggestive, and therefore inherently distinctive.

15.    Accordingly, HE&R since June 29, 2009 has owned and maintained common law rights to HE&R's Marks as trademarks, trade names, and service marks.

16.    HE&R has used HE&R's Marks to identify its services and to distinguish them from those of others by, among other things, prominently displaying the HE&R Marks in advertising and promotional materials for such services.

17.    HE&R and its affiliates have spent substantial sums annually on advertising to promote HE&R's Harvest Restaurant under HE&R's Marks, both

individually and through HE&R's "Dining in Hershey" campaign.  These advertisements are placed in various publications, including Central Pennsylvania based publications *Harrisburg Magazine* and *Susquehanna Style*, as well as distributed through direct mail pieces.

18.    HE&R's advertising of the HE&R Marks also has included regional and national promotion through print advertising, internet advertising, social media advertising, e-mail blasts, and attendance at industry events, trade shows and conventions.

19.    Although HE&R has not formally registered HE&R's Marks, HE&R since June 29, 2009 exclusively has utilized HE&R's Marks with regard to restaurant services, through advertising and otherwise, in Central Pennsylvania, which market area includes, but is not limited to, Harrisburg, Dauphin County, where Defendants presently intend to open their restaurant under the Harvest mark.

20.    Through those efforts, HE&R has acquired significant goodwill in and created substantial public recognition of HE&R's Marks throughout Central Pennsylvania and draws customers from throughout that region.

21.    HE&R's Harvest Restaurant has been featured in local written publications and on local television and radio broadcasts throughout Central Pennsylvania, including recognition as a *Susquehanna Style Magazine* "Silver Spoon Award" winner for the years 2010 through 2013.

6

22.     HE&R's exclusive use of HE&R's Marks has caused the residents of Central Pennsylvania to recognize HE&R's Marks as identifying HE&R's Harvest Restaurant and its goods and services.

23.     HE&R therefore is the senior user of HE&R's Marks in Central Pennsylvania.

24.     HE&R did not, and has not, authorized Defendants to use HE&R's Marks or any aspect of those marks.

**B.     Defendants Are Junior Users Of The Contested Harvest Marks In Central Pennsylvania.**

25.     Upon information and belief, Magrogan Group is a multi-million dollar restaurant conglomerate, which owns and operates or provides management services to approximately 14 restaurants under multiple names, including Doc Macgrogan's, Stella Rossa, Kildare's, and Harvest, most of which are located in the Philadelphia metropolitan area.

26.     In 2010, approximately one year after the opening of HE&R's Harvest Restaurant, Magrogan Group opened "Harvest Seasonal Grill and Wine Bar" in Glen Mills, Delaware County, Pennsylvania.

27.     Magrogan Group subsequently opened two additional Harvest Seasonal Grill & Wine Bars in and around Philadelphia, Pennsylvania.  The other two locations are in North Wales, Montgomery County and the City of Philadelphia, Pennsylvania.

7

28.     In October 2011, Magrogan Group filed a federal trademark application for registration of the mark HARVEST SEASONAL GRILL & WINE BAR and Design, therein admitting Defendants' date of first use of the Harvest mark in commerce was October 24, 2010.

29.     In March 2012, the mark HARVEST SEASONAL GRILL & WINE BAR, with an accompanying design featuring stalks of grain, as appears below, was federally registered at Reg. No. 4,157,676  (with the terms SEASONAL GRILL & WINE BAR disclaimed) ("Defendants' Marks") (HE&R's Marks together with Defendants' Marks are referred to herein as the "Contested Harvest Marks").



*See* Exhibit "A " (Defendants' USPTO trademark registration).

30.     The dominant elements of Defendants' Marks are the word "Harvest" and stylized stalks of grain, which are identical to, or a dominant part of, HE&R's Marks.

31.     On March 10, 2014, Defendant Harvest Susquehanna registered the fictitious name "HARVEST SEASONAL GRILL & WINE BAR" with the

Pennsylvania Department of State.  The address provided in that registration for the principal place of business from which HARVEST SEASONAL GRILL & WINE BAR would operate is 2625 Brindle Drive, Harrisburg, Dauphin County, Pennsylvania 17110.

32.     In March 2014, HE&R learned of Defendants' plan to open an additional location of their Harvest Seasonal Grill & Wine Bar at 2625 Brindle Drive, Harrisburg, Pennsylvania 17110 (this Harrisburg location is referred to herein as "Defendants' Harvest Seasonal Grill").  *See* Exhibit "B" (newspaper article announcing Defendants' plans).

33.     Between March 2014 and the date of filing of this action, Defendants began using the Contested Harvest Marks in Central Pennsylvania.

34.     Defendants have continued their use of the Contested Harvest Marks in Central Pennsylvania for the same purposes that HE&R uses the Marks in that region, including marketing of food and restaurant services.

35.     Specifically, Defendants are using the Contested Harvest Marks to promote a restaurant offering essentially identical cuisine as HE&R's Harvest Restaurant, including marketing a concept of a seasonal, farm-to-table American cuisine made up of locally-sourced ingredients, at comparable prices.  *See* Exhibit "C" (menus of HE&R's Harvest Restaurant and Defendants' Harvest Seasonal Grill).

36.     HE&R's Harvest Restaurant and Defendants' Harvest Seasonal Grill do and will compete for the same consumers.

37.     Defendants' new Harrisburg location is the first use of Defendants' Marks in Central Pennsylvania; accordingly, Defendants have no established trade, and hence no reputation and no goodwill in the Contested Harvest Marks in Central Pennsylvania.

38.     Defendants are junior users, and HE&R the senior user, of the Contested Harvest Marks in Central Pennsylvania.

### C.     HE&R Advised Defendants Far In Advance Of Defendants' Announced Restaurant Opening That Their Planned Use Of The Contested Harvest Marks In Central Pennsylvania Would Constitute Infringement.

39.     On or about March 17, 2014, Defendants' planned location in Harrisburg was announced in local media.

40.     On April 17, 2014, Dave Magrogan, owner of Defendant Magrogan Group, sent an e-mail to Brian Dailey, an employee of HE&R, whom he had met at a meeting of the Pennsylvania Restaurant and Lodging Association, a hospitality industry trade group.  In that e-mail, Magrogan stated: "Good speaking with [*sic*] at the PRLA meeting.  <u>As I mentioned our 4th Harvest location will be opening outside of Harrisburg and we are concerned about consumer confusion with Harvest at the Hershey Hotel.</u>  We have trademarked Harvest and have advertised it in the tri-state region.  Can you connect me with someone to discuss this

matter?"  (emphasis added).  A copy of this correspondence is attached hereto as Exhibit "D."

41.    On April 22, 2014, HE&R sent a written notice to Defendant Magrogan Group, explaining that HE&R was the senior user of HE&R's Marks in Central Pennsylvania and demanding that Magrogan Group cease and desist from use of the Contested Harvest Marks in Central Pennsylvania.  A copy of this letter is attached hereto as Exhibit "E."

42.    Defendant Magrogan Group failed or refused to respond to HE&R's April 22, 2014 cease and desist letter.

43.    HE&R sent the same correspondence to Defendant Magrogan Group on May 29, 2014.  A copy of this second letter is attached hereto as Exhibit "F."

44.    On July 8, 2014, HE&R received a response to its cease and desist letter from Magrogan (although Magrogan's response was dated June 27, 2014 and purportedly sent by regular mail), in which Magrogan Group refused to cease its use of the Contested Harvest Marks in Central Pennsylvania.  A copy of this correspondence is attached hereto as Exhibit "G."  In this e-mail, Dave Magrogan, contradicting his initial April 17, 2014 correspondence to HE&R, stated that Defendant Magrogan Group no longer perceived a likelihood of confusion between the parties' products and services in the Central Pennsylvania market.

11

45.    On July 11, 2014, HE&R sent a third letter to Defendant Magrogan Group, responding to Magrogan's correspondence.  By that letter, HE&R noted Magrogan Group's plans to open its Harrisburg location of Harvest Seasonal Grill & Wine Bar in August, 2014.  HE&R stated that its position on Defendants' use of the Harvest Marks remained non-negotiable, and again requested that Defendants cease and desist use of the Contested Harvest Marks in Central Pennsylvania.  A copy of this letter is attached hereto as Exhibit "H."

    **D.**　**Defendants' Use Of The Contested Harvest Marks In Central Pennsylvania Will Mislead Consumers As To HE&R's Ownership Or Sponsorship Of Defendants' Restaurant, And Therefore Violates HE&R's Common Law Rights To Exclusive Use Of Those Marks In Central Pennsylvania.**

46.    Despite the federal registration of their marks, Defendants enter the Central Pennsylvania market subject to the common law trademark rights previously acquired, in good faith, by HE&R.

47.    Defendants' planned location for the Harrisburg branch of their Harvest Seasonal Grill is 10 miles from HE&R's Harvest Restaurant.  *See* Exhibit "I," hereto (indicating distance calculated by an online "As the Crow Flies" distance calculator, http://tjpeiffer.com/crowflies.html and driving distance as indicated by Google Maps "Get Directions" feature, https://maps.google.com).

48.     Defendants are not now and never have been authorized by HE&R or its affiliates to use HE&R's Marks in connection with Defendants' Harvest Seasonal Grill in Central Pennsylvania or in any manner whatsoever.

49.     HE&R's common law trademarks have priority over Defendants' use of the Contested Harvest Marks in Central Pennsylvania through HE&R's earlier date of first use.

50.     The restaurant services for which Defendants have commenced use of the Contested Harvest Marks in Central Pennsylvania are nearly identical to the restaurant services offered and sold since June 29, 2009 by HE&R in that market under HE&R's Marks.

51.     The parties both advertise that their restaurants will feature healthy, locally-sourced, all natural, and farm-fresh American cuisine, with menus changing seasonally.

52.     The parties both advertise the local vendors from which they procure their seasonal meats, cheese, produce, and other goods. The parties share vendors based in Central Pennsylvania, including Lancaster Co-Op farms for produce. Defendants' infringement on HE&R's Marks is likely to confuse vendors and further confuse the public regarding the origin of the parties' goods and services.

53.     Because the parties' marks—as well as their respective goods and customer bases—are nearly identical, consumers inevitably will be confused if

Defendants are permitted to continue using the Contested Harvest Marks in Central Pennsylvania. It is extremely likely that consumers mistakenly will believe that Defendants are affiliated with HE&R, or that HE&R is the source or origin of Defendants' products and services, or that Defendants are selling or distributing HE&R's products and services.

54.     Actual confusion between the parties' restaurants has occurred.

55.     On or about June 20, 2014, a visitor from New Jersey to HE&R's Harvest Restaurant, noting the menu's promotion of local produce, inquired whether the restaurant was part of a chain with a location in Philadelphia. The visitor displayed the website for Defendants' Harvest Seasonal Grill & Wine Bar chain to HE&R's staff during that conversation.

56.     On July 11, 2014, two guests visiting HE&R's Harvest Restaurant from Philadelphia approached an HE&R staff member at a reception and asked whether HE&R's Restaurant was part of a chain; the staff member had to explain that the parties' restaurants were separate.

57.     If Defendants are permitted to continue their infringing use of the Contested Harvest Marks, additional actual and potential purchasers and consumers in Central Pennsylvania, upon encountering Defendants' storefront, website, and advertisements bearing the Contested Harvest Marks, are likely to mistakenly believe that Defendants' food and restaurant services originate with, or

are licensed, approved, or sponsored by, or otherwise affiliated with or related to, HE&R.

58.     Defendants' use of the Contested Harvest Marks in Central Pennsylvania in connection with its provision of food and restaurant services is likely to cause confusion, or to cause mistake, or to deceive consumers as to the affiliation, connection, or association of Defendants with HE&R, or as to the origin, sponsorship, or approval of Defendants' food and restaurant services by HE&R.

59.     Defendants have engaged in such conduct for the improper purpose of diverting business away from HE&R by trading on the goodwill and reputation of HE&R's Harvest Restaurant, which HE&R has created in Central Pennsylvania since June 29, 2009.

60.     Defendants' acts are willful and intentional and are causing and will continue to cause damage and irreparable harm to HE&R and to its valuable reputation and goodwill with purchasers and consumers.

61.     HE&R has notified Defendants that their acts are violating HE&R's rights and has requested that Defendants discontinue all use of the Contested Harvest Marks in Central Pennsylvania.

62.     Defendants continue to use the Contested Harvest Marks in Central Pennsylvania.

63.     Defendants' use of the Contested Harvest Marks infringes upon HE&R's trademark rights.

## IV. CAUSES OF ACTION

## COUNT I – FALSE DESIGNATION OF ORIGIN UNDER SECTION 43 OF THE LANHAM ACT (15 U.S.C. §1125(a))

64.     HE&R repeats and realleges paragraphs 1 through 63 of this Complaint as if fully set forth herein.

65.     By its longstanding use of HE&R's Marks in Central Pennsylvania in connection with the sale, offering for sale, and advertising of food and restaurant services, HE&R has a valid and legally protected common law trademark in HE&R's Marks in Central Pennsylvania.

66.     Defendants' use of the Contested Harvest Marks in Central Pennsylvania is likely to cause confusion, to cause mistake, and to deceive the public as to the origin, sponsorship or approval of Defendants' goods and services, and the public is likely to believe mistakenly that Defendants' goods are approved by, licensed by, affiliated with, or in some other way legitimately connected with HE&R.

67.     Defendants, by these actions, have engaged and continue to engage in false designation of origin and unfair competition in violation of 15 U.S.C. §1125(a)(1)(A).

16

68.     HE&R has been injured, and continues to be injured and to suffer damages and harm, from Defendants' false designation of origin and unfair competition.

69.     HE&R has no adequate remedy at law.

70.     HE&R is entitled to any and all available remedies under 15 U.S.C. §§1116, 1117 and 1125, including injunctive relief.

## COUNT II – MISREPRESENTATION UNDER SECTION 43 OF THE LANHAM ACT (15 U.S.C. §1125(a))

71.     HE&R repeats and realleges paragraphs 1 through 63 of this Complaint as if fully set forth herein.

72.     Defendants' advertisement of their products and services under an identical word mark to HE&R's Marks and a design mark that is nearly identical to HE&R's Marks misrepresents the nature, characteristics, and qualities of Defendants' products and services and is likely to cause the public to confuse the nature, characteristics, and qualities of Defendants' products and services with those of HE&R products and services.

73.     Defendants, by these actions, have engaged and continue to engage in false representation and unfair competition in violation of 15 U.S.C. §1125(a)(1)(B).

74.     HE&R has been injured, and continues to be injured and to suffer damages and harm, from Defendants' acts of false representation and unfair competition.

75.     HE&R has no adequate remedy at law.

76.     HE&R is entitled to any and all available remedies under 15 U.S.C. §§1116, 1117 and 1125, including injunctive relief.

## COUNT III – COMMON LAW TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION

77.     HE&R repeats and realleges paragraphs 1 through 63 of this Complaint as if fully set forth herein.

78.     Defendants' use of the Contested Harvest Marks for its restaurant operations constitutes common law trademark infringement and unfair competition in violation of common law.

79.     Defendants' acts described above have caused injury and damages to HE&R, and have caused irreparable injury to HE&R's goodwill and reputation and, unless enjoined, will cause further irreparable injury, whereby HE&R has no adequate remedy at law.

## **PRAYER FOR RELIEF**

WHEREFORE, Hershey Entertainment & Resorts Company prays that this Court enter judgment against Defendants David Magrogan Group, LLC and Susquehanna Harvest, LLC, jointly and severally, as follows:

A.     Granting preliminary and permanent injunctive relief restraining Defendants, its officers, directors, agents, employees, servants, attorneys, successors, assigns and others controlling, controlled by or affiliated with Defendants and all those in privity or active concert or participation with any of the foregoing, and all those who receive actual notice by personal service or otherwise:

(1)     from using in Central Pennsylvania, in writing or in any media, the Contested Harvest Marks, HE&R's Marks, or any name, mark or phrase containing HE&R's Marks used in connection with goods or services related to those with which HE&R uses HE&R's Marks;

(2)     from otherwise falsely advertising Defendants' services as affiliated with HE&R or HE&R's Marks; and

(3)     from otherwise competing unfairly with Plaintiff;

B.     Ordering that Defendants be adjudged to have violated Sections 43(a) of the Lanham Act, 15 U.S.C. §§1114 and 1125(a), to have committed acts of false advertising, trademark infringement, and deceptive trade practices in

violation of state common law, and further ordering that the foregoing acts by Defendants be adjudged to have been done willfully and deliberately.

C.      Ordering Defendants to pay for and cause to be disseminated corrective advertising to ameliorate the adverse consequences of Defendants' acts of false advertising, trademark infringement, and deceptive trade practices, the content, nature, form and extent of which is to be approved by HE&R and this Court;

D.      Ordering an accounting of all gains, profits, savings and advantages realized by Defendants from its aforesaid acts of false advertising, trademark infringement, and deceptive trade practices;

E.      Awarding such damages as HE&R shall establish in consequence of Defendants' aforesaid acts of false advertising, trademark infringement and deceptive trade practices, together with appropriate interest thereon, including three times the amount found as actual damages by the trier of fact to properly compensate HE&R for its damages pursuant to 15 U.S.C. §1117(a);

F.      Ordering Defendants to recall from all chains of distribution all promotional materials, advertisements, commercials, infomercials and other items, the dissemination by Defendants of which would violate the injunction herein granted;

G.      Ordering Defendants to deactivate all websites and social media sites and deliver up for destruction any and all promotional materials, advertisements, commercials and other items in the possession, custody or control of Defendants which, if displayed or used, would violate the injunction herein granted;

H.      Ordering that, pursuant to Section 34(a) of the Lanham Act, 15 U.S.C. §1116(a), Defendants shall serve upon HE&R within thirty (30) days after service on Defendants of an injunction, or such extended period as the Court may direct, a report in writing under oath setting forth in detail the manner and form in which Defendants has complied with the injunction;

I.      Awarding HE&R its costs and expenses of this action;

J.      Declaring that this is an exceptional case, pursuant to 15 U.S.C. §1117, because of the willful and deliberate nature of Defendants' acts of false advertising and trademark infringement and awarding HE&R its reasonable attorneys' fees; and,

K.     Granting such other and further relief as this Court may deem

just and proper.

McNEES WALLACE & NURICK LLC

By:   /s/ Devin Chwastyk
Devin Chwastyk
Pa. Bar I.D. No. 91852
dchwastyk@mwn.com
Rebecca A. Finkenbinder
Pa. Bar I.D. No. 90422
rfinkenb@mwn.com
100 Pine Street
P.O. Box 1166
Harrisburg, PA  17108-1166
(717) 232-8000

Attorneys for Plaintiff

Dated:  July 25, 2014